IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GILBERTO VILLASENOR CERVANTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 2121 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| THE CITY OF HARVEY, J. JOSHUA, Chief of ) | |
| Police of the Harvey Police Dept, in his official ) | |
| capacity; J. COOK, #785, in his individual and ) | |
| official capacity; UNKNOWN HARVEY POLICE ) | |
| OFFICERS, in their individual and official ) | |
| capacities; THOMAS P. FITZGERALD, Chief of ) | |
| Police of the Cook County Sheriff's Police Dept., ) | |
| in his official capacity; SHIRLEY MARSHALL, ) | |
| #263, in her individual and official capacity; ) | |
| MICHAEL F. SHEAHAN, Cook County Sheriff, ) | |
| in his official capacity; ERNESTO VELASCO, ) | |
| Exec. Director the Cook County Dept. of ) | |
| Corrections, in his official capacity; and ) | |
| UNKNOWN COOK COUNTY SHERIFF'S ) | |
| POLICE OFFICERS, in their individual and ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gilberto Villasenor Cervantes, filed a second amended complaint under 42 U.S.C. §1983 and §1988 alleging that City of Harvey police officer J. Cook and other unknown Harvey police officers, Cook County Sheriff Deputy Shirley Marshall, and other unknown Cook County Sheriff's Police officers violated his due process rights under the Fourth and Fourteenth Amendments by detaining him without informing him of his rights and the charges against him, holding him on a facially invalid warrant, and coercing him to sign a waiver of extradition, which then caused him to be transferred between detention facilities for two months before straightening out the matter in Contra Costa, California.

In addition, plaintiff has brought a claim against Andrew Joshua, the Chief of Police of the Harvey Police Department in his official capacity, alleging that the department's policy of detaining individuals on outstanding warrants, without sufficient investigative work to establish probable cause is a violation of due process. Plaintiff further asserts a claim against Thomas P. Fitzgerald, Chief of Police of Cook County Sheriff's Police Department, Michael F. Sheahan, Cook County Sheriff, and Ernesto Velasco, Executive Director of Cook County Department of Corrections in their official capacities, alleging that their policies of detaining and extraditing individuals without corroboration of the detainee's identity violates due process.

Defendants Marshall and Sheahan (the "Cook County defendants)[1] have moved to dismiss plaintiff's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff has failed to allege a violation of a constitutional right under either the Fourth or the Fourteenth amendments, that his claims are barred by the *Rooker-Feldman* doctrine, and that he has failed to state a claim against the Cook County Sheriff's Office under the requirements of *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).[2]

For the reasons set forth below, the court grants defendants' motion to dismiss.

## FACTUAL SUMMARY

According to the complaint, on September 20, 2003, plaintiff was parked at North Commercial and 156th St. in Harvey, Illinois. A Harvey Police officer approached the car, detained plaintiff, and took him to the Harvey police station. Harvey officer J. Cook charged

---

[1] Although defendant Velasco did not join this motion, it does not appear that he was served with process and, in any event, Velasco is in the same jurisdictional position as Marshall and Sheahan.

[2] The Harvey defendants have answered the complaint.

plaintiff with improper parking on a roadway, not having a valid driver's license, and with fleeing a Contra Costa, California arrest warrant issued against Enrique Cervantes. Plaintiff was detained despite the fact that his name, Gilberto Villasenor Cervantes, was not the name on the warrant, and despite his protestations regarding his mistaken identity.

On September 23, 2003, Harvey officers took plaintiff to the Cook County Sheriff's Police Department. When he appeared in court on the traffic charges, the court computer again indicated that there was an outstanding warrant from the Contra Costa, California Police Department for Enrique Cervantes. The criminal court judge dismissed the traffic violations against plaintiff but continued to hold him on the outstanding warrant.

Despite plaintiff's protests that he was not the person on the warrant, he signed a waiver of extradition, thereby waiving any proceeding to challenge his extradition prior to being sent to California. He alleges that this waiver was signed under extreme duress because the officers told him that going to California to resolve the matter was the only way to end his incarceration. After signing the waiver, plaintiff, represented by counsel, went before the circuit court judge, who questioned him regarding the waiver of extradition. In response to the judge's questions, plaintiff stated that he had signed the waiver of his own free will. Therefore, the judge found the wavier valid.

Despite continued protestations to Marshall and other Cook County Police Officers that he was not the person named in the warrant, plaintiff was placed on a bus and spent two months transferring between detention facilities until arriving in Contra Costa, California on November 26, 2003. Upon arrival, the Contra Costa officers ran plaintiff's fingerprints and determined that he had no warrants against him. They released him and bought him an airplane ticket back to Illinois.

Plaintiff filed this complaint for damages under 42 U.S.C. §1983 and §1988 for violations of his right to due process under the Fourth and Fourteenth amendments.

## DISCUSSION

Defendants Marshall and Sheahan have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants also argue that this court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine to hear plaintiff's claim. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, -- U.S. --, 125 S.Ct. 1517 (2005). This court interprets the federal rules liberally "so that erroneous nomenclature in a motion does not bind a party at his peril." *Snyder v. Smith,* 736 F.2d 409, 419 (7th Cir.1984). Therefore, although defendants have not expressly moved for dismissal under Fed. R. Civ. P. 12(b)(1), their arguments regarding *Rooker-Feldman* suggest that they are moving for dismissal for lack of subject matter jurisdiction, in addition to failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The defendants have attached the transcript from the state court proceedings to their 12(b)(6) motion. Analyzing defendant's motion under Rule 12(b)(1), the court can take notice of the state court transcript. While plaintiff argues that the addition of the state court transcript should convert the defendant's motion into a motion for summary judgment under Fed. R. Civ. P. 56, a district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993). An analysis of all the facts presented in a light most favorable to plaintiff reveals that this court

4

lacks subject matter jurisdiction to hear this claim under the *Rooker-Feldman* doctrine, which states that federal courts other than the United States Supreme Court have no jurisdiction to review state court judgments, unless Congress has expressly authorized them to do so. *See Rooker*, 263 U.S. 414, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Exxon Mobil*, 125 S.Ct. at 1521-22 (2005).

The *Rooker-Feldman* doctrine is a consequence of the limited jurisdiction of lower federal courts which, unlike the Supreme Court, may exercise only power granted to them by Congress. *Rooker* made explicit that this power does not include the power to review state court judgments. Affirming the dismissal of a suit seeking to have the judgment of an Indiana court declared void as unconstitutional, the Supreme Court stated: "If the [state court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication." *Rooker*, 263 U.S. at 415, 44 S.Ct. 149 (1923). The Court noted that the plaintiffs had not timely appealed from the Indiana Supreme Court to the United States Supreme Court, adding "an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Id.* at 416, 44 S.Ct. 149 (1923).

Subsequently the Supreme Court clarified its holding in *Rooker* in *Feldman*. In *Feldman*, the Court decided two suits brought by rejected applicants to the District of Columbia bar who had been denied waivers of a bar admission rule requiring applicants to be graduates of law schools approved by the American Bar Association. The applicants unsuccessfully appealed in state court, and then brought claims in federal district court alleging that the rule violated the Fifth Amendment. They further alleged that the District of Columbia Court of Appeals had

acted unreasonably and discriminatorily in refusing to consider the plaintiffs' qualifications when it had repeatedly waived the rule in the past.

The district court dismissed the suits, stating that it lacked subject matter jurisdiction to review decisions of the District of Columbia Court of Appeals. The United States Court of Appeals for the District of Columbia Circuit affirmed the dismissals of the plaintiffs' antitrust claims, but remanded for consideration of the constitutional issues, finding that the waiver proceedings were administrative acts rather than judicial decisions. *Feldman*, 460 U.S. at 469 n.3, 103 S.Ct. 1303 (1983).

The Supreme Court held that the proceedings in the District of Columbia Court of Appeals had been judicial rather than administrative. The Court held that because the plaintiffs' claim that the District of Columbia Court of Appeals had acted arbitrarily and capriciously was "inextricably intertwined" with the District of Columbia Court of Appeals' judicial decisions, there was no subject-matter jurisdiction over that claim. On the other hand, challenges to the constitutionality of the rule itself did not require review of a judicial decision in a particular case and the district court could consider them. *Id.* at 487, 103 S.Ct. 1303 (1983).

In the Seventh Circuit, the test for whether a claim is "inextricably intertwined" with a state court judgment is whether the alleged injury resulted from the judgment itself or is distinct from that judgment. If the former, the federal court lacks subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional. *Edwards v. Illinois Board of Admissions*, 261 F.3d 723, 728-29 (7th Cir. 2001).

Recently, in *Exxon Mobil*, the Supreme Court clarified that the *Rooker-Feldman* doctrine "precludes federal subject matter jurisdiction only when, after state proceedings have ended, a losing party in state court files suit in federal court complaining of an injury caused by the state

court judgment and seeking review and rejection of that judgment." *Holt v. Lake County Bd. Of Com'rs*, 408 F.3d 335, 2005 WL 1163679 (7th Cir. 2005) (citing *Exxon Mobil*, 125 S.Ct. at 1521-22 (2005)).

In addition, *Exxon Mobil* reiterated the "independent claim" exception to the *Rooker-Feldman* doctrine. *Exxon Mobil*, 125 S.Ct. at 1527 (2005). "If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). However, a claim is considered "independent" only when there was no "reasonable opportunity" to raise the claim in the state court proceeding. *Long v. Shorebank Development Corp.*, 182 F.3d 548, 558 (7th Cir. 1999). For example, no "reasonable opportunity" exists where "either some action taken by the state court or state court procedures in place have formed the barriers that the litigants are incapable of overcoming in order to present certain claims to the state court." *Id.*

For the purposes of determining when a claim is the result of an independent injury, the Seventh Circuit has distinguished between federal claims brought by the plaintiffs in the state court suit and claims brought by the defendants in the state court suit. *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995); *Garry v. Geils*, 82 F.3d 1362 (7th Cir. 1996). Claims brought by state court plaintiffs may raise *res judicata* issues, while claims brought by state court defendants are usually barred by *Rooker-Feldman*. This is because a losing state court defendant has been injured by the action of the state court. On the other hand, the losing plaintiff has not been "injured" by the court's failure to respond to his claims, but is barred by *res judicata* from

raising them again in a federal court. Thus, only a state court plaintiff can allege a "prior injury that a state court failed to remedy" without being barred by *Rooker-Feldman*.

In an attempt to avoid the application of *Rooker-Feldman* to his claims, plaintiff argues that he is bringing an "independent claim." Plaintiff alleges that his injury was not the direct result of the state court judgment because the constitutional deprivations he suffered occurred before there was state court involvement. Plaintiff asserts that the defendants' coercive actions forced plaintiff to believe that signing the waiver was the only way to resolve the matter and get out of jail, and that these actions were the "sole proximate cause" of the constitutional deprivation of his rights. Thus, even though he was the defendant in the state court proceeding, plaintiff argues that he is bringing an "independent claim" that the state court failed to remedy.[3]

Even if plaintiff was coerced into signing the waiver by one or more of the defendants, *Rooker-Feldman* still bars this court from hearing his claims against the Cook County defendants.[4] Plaintiff relies on *Long* to support his assertion that his claim deals with a prior injury that the state court failed to remedy. The plaintiff in *Long* lost an eviction proceeding in state court due to misrepresentations made by the defendants that she did not contest the

---

[3] Although plaintiff claims that the instant case is analogous to *McMurry v. Sheehan*, 927 F. Supp. 1082 (N.D. Ill. 1996)(J. Gettleman), the facts of *McMurry* are distinguishable. In *McMurry*, the plaintiff was held on a quashed warrant that the sheriff's computer system had erroneously displayed as active. After a judge determined that the warrant had in fact been quashed and ordered the plaintiff's release, the sheriff did not release the plaintiff. Instead, the plaintiff was held for over ten hours in the general prison population, where he was raped and sexually assaulted by other inmates. Unlike the plaintiff in *McMurry*, plaintiff in the instant case was not held in custody after a judge ordered his release, but was detained consistent with the judicial determination that his waiver of extradition was valid.

[4] This court need not reach whether plaintiff has failed to state a *Monell* claim as alleged in defendants' motion to dismiss because this court lacks subject matter jurisdiction to hear that claim under *Rooker-Feldman*.

eviction. *Long,* 182 F.3d at 554 (7th Cir. 1999). Subsequently, she brought multiple claims in the U.S. District Court for the Northern District of Illinois for unlawful eviction, but the district court held that her claims were barred under *Rooker-Feldman*. While the Seventh Circuit agreed that her due process claims were barred by *Rooker-Feldman*, it held that her claims under the Fair Debt Collection Practices Act were not barred because they were not "inextricably intertwined" with the state court's judgment. *Id.* at 560. The court of appeals explained that because Illinois law precluded claims not relevant to the issue of possession in the eviction proceeding, such as fraudulent misrepresentation, there was no "reasonable opportunity" to raise such claim in the state court proceedings. *Id.* at 559.

In contrast to the plaintiff in *Long,* in the instant case plaintiff did have a "reasonable opportunity" to raise his claims regarding coercion in the state court proceeding. There were no state procedural rules barring him from raising his claims regarding police coercion in the waiver proceeding. Indeed, the judge specifically asked plaintiff about threats and coercion, and plaintiff told the judge that his signature was voluntary and that he agreed to be extradited to California. Therefore, because plaintiff had an opportunity to assert his claims regarding coercion in the state court proceeding, his claims are "inextricably intertwined" with the state court judgment and this court lacks jurisdiction over the claims even if that judgment was erroneous. Edwards, 261 F.3d at 728-29.

Additionally, plaintiff's injuries were a direct result of the state court decision that held his waiver of extradition valid. Plaintiff argues that the "state court judge in no way caused plaintiff's continued incarceration due to the fact that he was simply acting as a conduit for Gilberto's wishes to go to California and sort this matter out." Plaintiff is wrong; it was only the state court finding that sent plaintiff to California. Any ruling by this court that the waiver of

9

extradition was not valid, therefore, would in effect be reversing the previous state court judgment.

The only possible claim against the Cook County defendants would be if they had held plaintiff based solely on the facially invalid warrant. The allegations of the second amended complaint and the material submitted by the Cook County defendants establish, however, that these defendants took custody of plaintiff on September 23, 2003, only in connection with the extradition proceeding. The Cook County defendants' obligation was to take defendant before the judge on the warrant, which is precisely what they did, whereupon plaintiff told the judge that he voluntarily waived extradition - - a statement entirely at odds with his claim of coercion. As discussed above, the state judge's finding that the waiver was valid cannot be reviewed by this court. Because the Cook County defendants' actions were coextensive with plaintiff's extradition proceeding, his claims against them are barred by *Rooker-Feldman*.

Thus, while this court sympathizes with the ordeal that plaintiff suffered, his current claims for damages against the Cook County defendants are "inextricably intertwined" with the previous state court judgment. Accordingly, this court lacks subject matter jurisdiction to hear these claims.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted and defendants Thomas P. Fitzgerald, Shirley Marshall, Michael F. Sheahan, Ernesto Velasco, and unknown Cook County Sheriff's police officers are dismissed and struck from the caption.

**ENTER:** **June 15, 2005**

Robert W. Gettleman
United States District Judge

10